UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at LONDON**

| | | |
|---|---|---|
| BARBARA E. SHEPHERD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | 6:20-CV-137-JMH |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **and ORDER** |
| KILOLO KIJAKAZI, | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

** ** ** ** **

In May 2017, Plaintiff Barbara E. Shepherd filed her current application[1] for disability insurance benefits (DIB), alleging disability beginning December 12, 2013, due to high blood pressure and cholesterol, hypothyroidism, back problems, depression, carpal tunnel syndrome, and insomnia. (Tr. 336-42, 360). After initial and reconsideration denials (Tr. 201-47, 251-57), and an administrative hearing (Tr. 120-44), the ALJ denied Plaintiff's claim on May 13, 2019 (Tr. 91- 110). The Appeals Council then declined Plaintiff's request for review (Tr. 1-7), making the ALJ's May 2019 decision the final agency decision for purposes of judicial review. 20 C.F.R. § 404.981, 422.210(a). This appeal

_____

[1]Plaintiff filed a previous application for DIB that was denied by an ALJ on November 2, 2016. (Tr. 179-96).

Page **1** of **16**

followed. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). Fully briefed (DE 13 & 15), the matter is ripe for review.

**FACTS**

Plaintiff was 50 years-old on the date of the ALJ's decision, with a high school education and training as a certified nursing aid, as well as in phlebotomy (Tr. 336, 361). Her past relevant work includes certified nursing assistant and warehouse worker (Tr. 361).

Plaintiff's alleged disability stems from a low back injury[2] she sustained at work in December 2013. (Tr. 490). She saw a worker's compensation doctor for treatment of her injury, who permanently restricted her to lifting no more than 20 pounds. (Tr. 188). In July 2014, Plaintiff was released to go back to work. (Tr. 458). She subsequently continued to have pain and x-rays performed in December 2014, showed spondylosis at multiple levels in her mid-to-low back and neck. (Tr. 556-57).

In March 2015, Plaintiff started seeing John W. Gilbert for treatment neck pain and headaches. (Tr. 871). At that first visit, Dr. Gilbert noted that x-rays showed degenerative disc disease, spondylosis, and probable relative foraminal encroachment in two

---

[2] Plaintiff's motion addresses her physical problems, so this recitation of the facts will focus on those impairments. Although Plaintiff refers to her "psychological problems which resulted in him [sic] being admitted to the psychiatric ward as well as his [sic] weekly and ongoing medical treatment for these problems" there is no evidence of any psychiatric hospitalization in the record (DE 13 at 14). Moreover, Plaintiff does not make any actual argument regarding her mental impairments.

levels of Plaintiff's neck. (Tr. 871). Examination showed spasm, tenderness, and decreased range of motion in her neck, mid-back, and low back. (Tr. 871). Dr. Gilbert recommended physical and chiropractic therapy and continued use of pain medication and muscle relaxants. (Tr. 871). Through December 2017, Dr. Gilbert continued to see Plaintiff for her pain complaints, and his treatment modalities included medications, injections, and a referral to a pain management practice. (Tr. 872-84).

Between November 2015 and January 2019, Plaintiff received services from Kentucky Pain Management Services. (Tr. 676-773, 1062-088). She consistently reported that her pain management improved her ability to walk, sleep, stand, wash dishes, do light housekeeping, and shop for groceries. (Tr. 682, 687, 740, 757, 759, 761, 763, 765, 769, 771, 1079, 1083).

In addition to seeing practitioners for her neck and back complaints, Plaintiff's primary care providers, Amy Fowler, M.D. and Leslie Deaton, APRN, treated her for various other impairments, including high blood pressure, high cholesterol, hypothyroidism, insomnia, and vitamin D deficiency (Tr. 601-48, 978-1012). Plaintiff also underwent other treatment, including surgery for carpal tunnel syndrome (Tr. 590-611, 850-66) and heart palpitations (Tr. 542-50, 649-66, 965-70).

In December 2017, state agency medical consultant Robert K. Brown, M.D., reviewed Plaintiff's records and assessed her

functional abilities. Dr. Brown opined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk for about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally stoop, kneel, crouch, crawl, and climb ladders and stairs; and never climb ladders, ropes, or scaffolds. (Tr. 235-36). Dr. Brown also noted that Plaintiff should avoid concentrated exposure to vibration and hazards, such as unprotected heights and machine operations. (Tr. 236).

In January 2019, Dr. Gilbert completed a form in which he opined that Plaintiff could occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds; stand and walk less than two hours in an eight-hour workday; and sit less than two hours in an eight-hour workday. (Tr. 1089). Dr. Gilbert stated that: (1) Plaintiff could sit and stand only 10 minutes at a time before needing to change positions; (2) needed to walk around every 10 minutes for 10 minutes; (3) needed to shift between sitting and standing at will; and (4) needed to lie down throughout the day. (Tr. 1089-90). He also opined that Plaintiff could never twist, stoop, crouch, or climb stairs and ladders; and further, that she had limitations on her ability to reach, handle, finger, feel, push, and pull. (Tr. 1090).

Later that month, Dr. Fowler completed a form in which she reached, essentially, the same conclusions as Dr. Gilbert, on Plaintiff's limitations. (Tr. 1092-96).

At the February 6, 2019, hearing, Plaintiff testified that she had back and neck pain, along with bad headaches. (Tr. 127-28). She said she had constant low back pain that sometimes radiated into her legs. (Tr. 131). Plaintiff reported that she could sit, stand, and walk only 15 to 20 minutes at a time and lift only 7 to 10 pounds (Tr. 131). She stated that the carpal tunnel surgery had helped the numbness and tingling in her upper extremities, but that she still had pain from her wrist to her elbow. (Tr. 128). She also had pain radiating from her neck into her shoulders and arms (Tr. 134). Plaintiff described difficulty using her hands for gripping, fingering, and dealing with fine objects. (Tr. 136-37). She also said that she had developed osteoporosis and had to take medication for it once a month. (Tr. 130).

**ALJ'S DECISION**

In his May 2019 decision, ALJ Adelaide Edelson found that Plaintiff had severe impairments consisting of degenerative disc disease, mood disorder, obesity, hypertension, and history of carpal tunnel release. (Tr. 97). The ALJ found Plaintiff's impairments did not meet or equal any listing (Tr. 97-98), and that Plaintiff retained the residual functional capacity (RFC) to

perform light work as defined by the regulations within the following parameters:

- No climbing ladders, ropes, or scaffolds;

- No more than occasional stooping, kneeling, crouching, crawling, or climbing ramps and stairs;

- No more than frequent handling and fingering with her right upper extremity;

- Avoiding concentrated exposure to vibration and workplace hazards such as dangerous moving machinery and unprotected heights;

- Understanding, remembering, and carrying out simple instructions and tasks; and

- No more than occasional contact with the public and adapting to workplace changes; and

- Tolerating frequent interaction with co-workers, supervisors, and the public.

(Tr. 98-99). The ALJ found that Plaintiff was unable to perform her past relevant work (Tr. 104), but based on vocational expert testimony, she could perform the representative unskilled light jobs of laundry worker, parking lot attendant, and mail sorter (Tr. 105). Therefore, the ALJ found that Plaintiff was not disabled.

### STANDARD OF REVIEW

As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Id*. at 1154. It is met "if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth v. Comm'r of Soc. Sec*., 402 F.3d 591, 595 (6th Cir. 2005) (citation and internal quotations omitted). A reviewing court is not empowered to conduct a *de novo* review, resolve conflicts in evidence, or to decide questions of credibility. *See Ulman v. Comm'r of Soc. Sec*., 693 F.3d 709,713 (6th Cir. 2012). Rather, if the Court finds substantial evidence to support the Commissioner's judgment, it must affirm that decision even if it would have decided the matter differently, and even if substantial evidence also supports the opposite conclusion. *Id*. at 714.

### ANALYSIS

Plaintiff claims that "the ALJ failed to properly review . . . the medical evidence in this claim, especially considering the reports of [Dr. Gilbert and Dr. Fowler]" (DE 13 at 9). But other than this conclusory statement and a discussion of weighing opinions, as well as "the treating physician rule," Plaintiff has

made no attempt to explain how the ALJ erred. In any event, the regulations and rulings discussed in Plaintiff's motion, regarding how an ALJ must address opinion evidence, are no longer applicable.

The agency recently implemented new rules for evaluating opinion evidence that apply to all claims filed after March 27, 2017, including Plaintiff's May 24, 2017 claim at issue here. *See* 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations alter how the agency considers medical opinions for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the new regulations, the ALJ focuses on the persuasiveness of the medical opinions, rather than "weigh" the opinion, using the following five factors: 1) supportability; 2) consistency; 3) relationship with the claimant; 4) specialization; and 5) other factors. 20 C.F.R. § 404.1520c(a)(c). The ALJ explains how he considered the factors of supportability and consistency, which are the two most important factors in determining the persuasiveness of a medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). The ALJ must explain in his decision how persuasive he finds the medical opinion(s) based on these two factors. *Id.* The ALJ may, but is not required to explain how he considered the other remaining factors, unless the ALJ finds that two or more medical opinions about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 404.1520c(b)(3).

Here, the ALJ considered both Dr. Gilbert's and Dr. Fowler's January 2019 opinions assessing limitations that would not allow for even sedentary work (Tr. 1092-1100), and concluded that they were not persuasive or consistent with the record (Tr. 102-03). Indeed, as the ALJ pointed out, the objective findings did not square with such extreme limitations. For instance, the only positive findings Dr. Gilbert recorded were spasm, tenderness, and decreased range of neck motion, but there were no findings of abnormal gait, strength, reflexes, or sensation (Tr. 872, 874, 876, 878, 879, 881). Such benign findings simply do not correspond with the extreme limitations assessed by Dr. Gilbert. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (Treating physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence.").

The ALJ also considered Dr. Gilbert's relationship with Plaintiff, because he had not seen Plaintiff since December 2017, when he gave his opinion over a year later (Tr. 102). *See* 20 C.F.R. § 404.1520c(c)(3)(i)-(v) (in assessing the relationship with the claimant, consideration should be given to the length of the treatment relationship, frequency of examinations, purpose of the

treatment relationship, extent of the treatment relationship, and examining relationship. Dr. Fowler's opinion was also inconsistent with the objective findings she recorded. Dr. Fowler consistently found Plaintiff had no abnormalities whatsoever, in all of her examinations. (Tr. 979, 983, 986, 989, 994).

These findings were also inconsistent with the findings of other providers. For instance, Ms. Deaton consistently found Plaintiff had full range of motion, intact sensation and reflexes, normal muscle strength, and normal gait (Tr. 601, 607, 609, 612, 619, 625, 630, 635, 637). *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (recognizing that the ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation").

True, Plaintiff suggests that inasmuch as the opinion evidence is open to another interpretation more favorable to her claim, the Court should decline to reweigh the evidence in this fashion. If the Commissioner's decision denying benefits is supported by substantial evidence, as it is here, the Court must affirm that decision. *See Longworth*, 402 F.3d at 595. Even if substantial evidence exists to support Plaintiff's claim, the Court must still affirm the Commissioner's decision because it is supported by substantial evidence. *See Buxton*, 246 F.3d at 772; *see also Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (even if the Court would have decided the matter differently than the

ALJ, if substantial evidence supports the ALJ's decision, it must be affirmed).

Plaintiff also contends that the ALJ failed to consider her subjective complaints, and cites to the application of the so-called "two-step process" under Social Security Ruling 96-7p (DE 13 at 13-14). But Plaintiff's bare-bones argument consisting of a one sentence declaration that the ALJ did not properly evaluate her complaints of pain fails to explain just *how* the ALJ erred. Thus, Plaintiff has once again waived this particular challenge to the ALJ's decision. *See, e.g., Hollon*, 447 F.3d at 491 ("[W]e limit our consideration to the particular points that *Hollon* appears to raise in her brief on appeal.").

Contrary to Plaintiff, the ALJ expressly considered Plaintiff's subjective complaints, summarizing Plaintiff's testimony and concluding that her statements about her symptoms was were "not well supported by medical evidence of record." (Tr. 100). For example, the ALJ noted (Tr. 101) that Plaintiff consistently reported that her treatment at the pain clinic resulted in improvement in her ability to walk, sleep, stand, do light housekeeping, take out trash, and shop for groceries. (*See* Tr. 682, 687, 740, 757, 759, 761, 763, 765, 769, 771, 1079, 1083). *See* 20 C.F.R. § 404.1529(c)(3)(iv) (stating an ALJ must consider the effectiveness of treatment); *Torres v. Comm'r of Soc. Sec.*, 490 F.App'x 748, 754 (6th Cir. 2012)(unpublished) (the fact that

Plaintiff's symptoms "often improved with medication and treatment" undercuts the claimed severity of his impairments).

The ALJ also discussed the paucity of objective findings to support such extreme limitations (Tr. 101). Indeed, as noted above, examinations by Dr. Gilbert consistently showed spasm, tenderness, and decreased range of neck motion, but no findings of abnormal gait, strength, reflexes, or sensation (Tr. 872, 874, 876, 878, 879, 881). Dr. Fowler consistently found Plaintiff had no abnormalities, at all, in her examinations. (Tr. 979, 983, 986, 989, 994). And Ms. Deaton consistently found Plaintiff had full range of motion, intact sensation and reflexes, normal muscle strength, and normal gait (Tr. 601, 607, 609, 612, 619, 625, 630, 635, 637). *See* 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical evidence"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543 (6th Cir. 2007) ("[T]he record is replete with medical evidence that Cruse's symptoms were not as severe as she suggested.").

Because the ALJ's analysis of Plaintiff's subjective complaints is supported Because the ALJ's analysis of Plaintiff's subjective complaints is supported by substantial evidence, the ALJ's decision should be affirmed. *Bowman v. Chater*, No. 96-3990, 1997 WL 764419, at *5 (6th Cir. Nov. 26, 1997) (unpublished). Even if substantial evidence exists to support Plaintiff's claim, the

Court should still affirm the ALJ's decision because it is supported by substantial evidence. *Buxton*, 246 F.3d at 772.

Plaintiff further claims that the ALJ erred in not adopting the same RFC finding assessed by the previous ALJ in the November 2016 unfavorable decision; however, she also seems to argue that the ALJ should have found a different RFC based on changed conditions. (DE 13 at 20).

Plaintiff's argument is premised on Sixth Circuit case law that provides that *res judicata* bound a later ALJ to the findings of a prior ALJ unless new and material evidence warranted changed findings. *See Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). However, the Sixth Circuit recently clarified its holding from *Drummond*. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). The *Earley* Court held that the key principles in *Drummond* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id*. at 931. As such, "it is fair for an [ALJ] to take the view that, absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id*. at 933. "A later [ALJ] may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id*. at 934.

The ALJ in this case observed the holding from *Drummond,* and concluded that the new evidence submitted in connection with the May 2017 application provided a basis for a different finding of Plaintiff's functional limitations from the earlier unfavorable decision (Tr. 99). The ALJ expressly found an additional severe impairment since his previous decision — a history of carpal tunnel release — and thus reasonably limited Plaintiff to no more than frequent use of the right upper extremity for handling or fingering to account for that impairment. (Tr. 99).

With respect to Plaintiff's claim that the RFC in the current decision differs from the earlier RFC finding, although the wording of the two RFCs is different, they impose essentially the same limits on Plaintiff, except for the additional manipulative restrictions. Both limit Plaintiff to simple unskilled light work with additional postural, environmental, interpersonal, and adaptive imitations (Tr. 98-99, 184). Thus, the ALJ's decision here does not run afoul of *Earley*, which held that *Drummond* did not prevent the agency from giving a fresh look to a new application containing new evidence that covered a new period of alleged disability (while being mindful of past rulings and the record in prior proceedings).

Lastly, Plaintiff generally argues that "there is not substantial evidence to support the denial of her application for social security benefits" and that "the combined effects of

Plaintiff's physical and mental impairments, reflect he [sic] could not perform a wide range of even sedentary work on a regular and sustained basis" (DE 13 at 23). In making this argument, Plaintiff fails identify any aspects of the decision that lacked support in the evidence. Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived, and it is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to "put flesh on its bones." *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Moreover, it is not the duty of the Commissioner or the Court to argue Plaintiff's case or otherwise act as his counsel. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 490-91 (6th Cir.2006).

In any event, a review of the evidence of record in this case demonstrates that the ALJ's decision is supported by substantial evidence. The ALJ expressly stated that he carefully considered the entire medical record, including all medical findings and observations, in reaching his decision (Tr. 97). The ALJ discussed the treatment notes and the conclusions Drs. Gilbert and Fowler, and Plaintiff's objective complaints. He weighed the medical opinions, assessed Plaintiff's credibility, found a residual functional capacity that included all of Plaintiff's credible limitations, and used vocational expert testimony to find there was other work Plaintiff could perform (Tr. 98-105). Plaintiff has

not identified any opinions or other evidence that was improperly considered by the ALJ. Thus, substantial evidence supports the ALJ's determination. *See Buxton*, 246 F.3d at 772 ("[F]indings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence which arguably supports a different conclusion.").

**CONCLUSION**

For the foregoing reasons,

**IT IS ORDERED** herein as follows:

(1)   That the Commissioner's final decision be, and the same hereby is, **AFFIRMED.**

(2)   That the Commissioner's motion for summary judgment(DE 15) be, and the same hereby is, **GRANTED.**

(3)   That Plaintiff's motion for summary judgment (DE 13) be, and the same hereby is, **DENIED.**

(4)   A separate judgment in conformity herewith **SHALL** this date be entered.

This the 17th day of August, 2021.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge